**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:25-CR-186-13 |
| | ) | |
| TORIANO WILSON, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**J. Nicholas Ranjan, United States District Judge**

At a detention hearing on July 16, 2025, Magistrate Judge Kezia O. L. Taylor ordered Defendant Toriano Wilson to be detained pending trial. ECF 215 at 28:17-21; ECF 79. In response, Mr. Wilson filed a combined motion for release and a detention hearing (ECF 174) on August 27, 2025, and an amended motion with minor corrections (ECF 180) on August 29, 2025. The government then filed its response in opposition to the motion (ECF 194), and Mr. Wilson filed a reply (ECF 195). For the reasons discussed below, the Court will deny Mr. Wilson's combined motion.

**BACKGROUND**[1]

The government alleges that Mr. Wilson was a member of a conspiracy distributing cocaine from in and around January 2023 to April 2024. ECF 102 at 1. The government's allegations rest on the following evidence presented by DEA Agent John Cottell during the detention hearing.

On February 17, 2024, law enforcement observed a tractor trailer pull up to the residence of three of Mr. Wilson's alleged co-conspirators. ECF 215 at 8:4-8. One of those co-conspirators, Marcos Francisco Tomas, exited the tractor trailer and entered the residence with a large, weighted duffel bag. *Id.* at 8:10-12. Soon after, agents detained Mr. Francisco Tomas and the other co-conspirator then present at

---

[1] The relevant factual background is taken from the indictment (ECF 102), the pre-trial services report, the transcript of the detention hearing (ECF 215), and the parties' briefing of Mr. Wilson's motion.

the house.  *Id.* at 8:13-18.  Upon a search of the residence, law enforcement recovered 10 kilograms of cocaine, a scale with white powder, a money counter, $15,800 from a safe inside an ottoman, and cell phones from the two co-conspirators present around the time of the search.  *Id.* at 8:19-25.

Based on extractions of those phones, it appeared that Mr. Francisco Tomas had been planning to visit Mr. Wilson that day.  *Id.* at 8:25-9:7.  Before Mr. Francisco Tomas's arrest, he spoke with Mr. Wilson over the phone three times and had a text conversation trying to coordinate an upcoming meeting.  *Id.* at 9:8-10:7.  Then during the hour or so after the arrest, Mr. Wilson unsuccessfully attempted to communicate with Mr. Francisco Tomas six more times.  *Id.*  The relevance of these communications is more obvious in sequence:

- *2:43 p.m., Mr. Francisco Tomas brings the duffel bag into the residence.*
- 2:50 p.m., text from Mr. Wilson to Mr. Francisco Tomas: "Where you at?"
- 2:57 p.m., 25-second call from Mr. Wilson to Mr. Francisco Tomas.
- 3:09 p.m., text from Mr. Francisco Tomas to Mr. Wilson: "Here."
- 3:14 p.m., text from Mr. Francisco Tomas to Mr. Wilson: "Give me a couple minutes.  I'll be in touch with you."
- 3:14 p.m., text from Mr. Wilson to Mr. Francisco Tomas: "How long, bro?  I don't want to just sit here."
- 3:15 p.m., text from Mr. Francisco Tomas to Mr. Wilson: "Give me 30 MTS."
- 3:31 p.m., 27-second call from Mr. Francisco Tomas to Mr. Wilson.
- 3:40 p.m., 13-second call from Mr. Wilson to Mr. Francisco Tomas.
- *4:01 p.m., Mr. Francisco Tomas and the other coconspirator then present at their residence are arrested.*
- 4:21 p.m., text from Mr. Wilson to Mr. Francisco Tomas: "Is he cool?"
- 4:27 p.m., missed call from Mr. Wilson to Mr. Francisco Tomas.
- 4:35 p.m., missed call from Mr. Wilson to Mr. Francisco Tomas.

- 4:39 p.m., text from Mr. Wilson to Mr. Francisco Tomas: "Bro, what's up?"

- 4:52 p.m., missed call from Mr. Wilson to Mr. Francisco Tomas.

- 5:03 p.m., text from Mr. Wilson to Mr. Francisco Tomas: "Phone is bouta die."

*Id.*

A couple of days later, on February 19, 2024, Mr. Wilson met with the third co-conspirator who lived with Mr. Francisco Tomas, but who had not yet been detained—Eric Vega.[2]  *Id.* at 10:21-24.  During the meeting, which occurred at Mr. Wilson's residence, it appeared that Mr. Vega gave Mr. Wilson a car battery.  *Id.* at 10:24-11:3. Immediately before meeting with Mr. Wilson, Mr. Vega had delivered a different car battery to a different alleged co-conspirator.  *Id.* at 10:13-20.  At the time, DEA intelligence indicated that drug traffickers were using empty car batteries to transport 4-5 kilograms of cocaine.  *Id.* 11:3-10.

Contact between Mr. Vega and Mr. Wilson appears to have continued over the next month.  Trackers on several vehicles owned by Mr. Vega showed other visits to Mr. Wilson's same residence on February 28 and February 29, 2024, and visits to another "location utilized" by Mr. Wilson on February 20, 22, 27, and 29 and March 1, 2, 3, and 4, 2024.  *Id.* at 11:11-24.  On March 18, 2024, Mr. Wilson and Mr. Vega exchanged text messages to coordinate a meeting time and place and later had two phone calls.  *Id.* at 11:25-12:6.  Then 12 minutes after the planned meeting time, Mr. Wilson texted Mr. Vega, "I'm here," and about ten minutes later they had another call.  *Id.* at 12:6-8.

On April 11, 2024, Mr. Vega was traveling from the Chicago area to Western Pennsylvania in the vehicle with the tracker and with another accompanying vehicle. *Id.* at 12:9-12.  Agents searched both vehicles and found $8,680 in the tracked

---

[2] On the day of the arrests, Mr. Vega communicated with an unknown Mexican phone number, which directed him to stay away from his residence.  ECF 215 at 10:8-12.

vehicle's center console and $9,400 in the accompanying vehicle's floorboards. *Id.* at 12:12-16.

Then, on July 10, 2025, agents searched Mr. Wilson's residence. *Id.* at 12:19-21. In both the living room and the master bedroom they found suspected marijuana. *Id.* at 12:22-13:2. In the kitchen, they found suspected cocaine and mushrooms, a scale with white residue, a composition notebook, and approximately $20,190 in currency. *Id.* at 12:25-13:4.

Based on this evidence against Mr. Wilson and other evidence against his alleged co-conspirators, a grand jury indicted Mr. Wilson and his 12 co-Defendants on July 8, 2025. ECF 102. Mr. Wilson is charged with conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii). *Id.* at 1 (Count 1 of the indictment).

On July 9, 2025, the Court issued a warrant for Mr. Wilson's arrest. ECF 19. After his arrest, Magistrate Judge Brown appointed Mr. Wilson CJA counsel and, the following afternoon, held his initial appearance. ECF 47, 49. Mr. Wilson's detention hearing was scheduled for July 16, 2025 before Magistrate Judge Taylor. ECF 53.

On July 15, 2025, Mr. Wilson informed his CJA counsel Robert Mielnicki that his mother had been in touch with private counsel Patrick Thomassey. ECF 180 at 2. Just before the detention hearing, Mr. Mielnicki spoke with Mr. Thomassey, and it remained unclear to Mr. Mielnicki who would represent Mr. Wilson at the hearing. *Id.* Ultimately Mr. Thomassey represented Mr. Wilson at the hearing, but in doing so, failed to cross-examine Agent Cottell or offer any evidence to rebut the government's presumption of detention. *Id.*; ECF 215 at 28:10-16. Mr. Wilson's girlfriend and sister, both potential third-party custodians, attended the hearing, but neither were called as witnesses. ECF 180 at 2.

After presentation of the evidence and argument, Magistrate Judge Taylor ordered Mr. Wilson to be detained pending trial because "the defendant [did] not

rebut[] the presumption of detention," and, if released, he would "pose [a danger] to any person and/or the community at large."  ECF 215 at 20:11-12, 28:17-21; ECF 79. In response, Mr. Wilson filed a combined motion for release from custody and for a detention hearing (ECF 174) on August 27, 2025, and an amended motion with minor corrections (ECF 180) on August 29, 2025.  In the motions, Mr. Wilson argued on the merits that the Court should release him on non-monetary bond with electronic monitoring or, alternatively, that the Court should schedule a second detention hearing because of Mr. Thomassey's failure to cross-examine Agent Cottell or offer any evidence to rebut the presumption of detention.  ECF 180 at 7-8.  The government then filed a response (ECF 194), and Mr. Wilson filed a reply (ECF 195).  The motion for release and a detention hearing is now fully briefed and ready for disposition.

## LEGAL STANDARD

Under 18 U.S.C. § 3145(b), "If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  The district court then reviews the magistrate judge's detention order *de novo*.  *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).

While typically the parties do not seek to proffer additional evidence following a detention hearing and therefore "the [District] Court [] rule[s] on the record established before the Magistrate Judge," *United States v. Bastianelli*, No. 17-CR-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) (Fischer, J.), "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on" the detention determination, "[t]he hearing may be reopened," 18 U.S.C. § 3142(f)(2).  The admission of additional evidence rests within the Court's discretion. *Bastianelli*, No. 17-CR-305, 2018 WL 1015269, at *4; *see United States v. Talbert*, No. 20-CR-266, 2020 WL 6048788, at *3 (W.D. Pa. Oct. 13, 2020) (Ranjan, J.) (No "additional or independent evidentiary

hearing [is required] by the district court, and the court may incorporate the transcript of the proceeding before the magistrate judge, including any admitted exhibits").

A defendant's detention pending trial is warranted if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). A presumption in favor of detention—subject to rebuttal by the defendant—arises if "there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C. § 3142(e)(3)(A).

A defendant can rebut this presumption by producing "some credible evidence. . . that he will appear and not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). In cases like this one involving distribution of narcotics, it "is not only helpful, but is often crucial to an effective rebuttal of the statutory presumption" that the defendant show sufficient evidence of his "moral integrity, respect for the law, or personal reliability." *United States v. Santiago-Pagan*, No. 08-CR-424, 2009 WL 1106814, at *5 (M.D. Pa. April 23, 2009). That said, "[t]he defendant's burden of production is relatively light and has been construed as easy to meet." *United States v. Araiza-Vega*, No. 20-CR-218, 2020 WL 6546136, at *4 (W.D. Pa. Nov. 6, 2020) (Hardy, J.) (citations omitted).

If the defendant provides enough evidence to rebut the presumption of detention, the evidentiary burden shifts back to the government to show that the defendant presents either a risk of flight or a danger to the community. *See United*

*States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986); *United States v. Perry*, 788 F.2d 100, 114-15 (3d Cir. 1986).

In determining whether pre-trial detention is warranted, the Court considers the following statutory factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character, family, employment, finances, length of residence, ties to community, drug abuse history, criminal history, record of appearance at court proceedings, and whether he was on bond at the time of the charged offense; and (4) the nature and seriousness of the danger posed by the person's release. *See, e.g.*, *Carbone*, 793 F.2d at 560-61; *Talbert*, 2020 WL 6048788, at *3.

## DISCUSSION & ANALYSIS

Mr. Wilson makes two main arguments. He first asks the Court to conduct a new detention hearing, so new counsel can cross the law-enforcement officer and put on evidence as to third-party custodians. He also argues that even on the current record, he has rebutted the presumption of detention, and so must be released. The Court disagrees on both counts.

As to conducting a new detention hearing, there is no question that the Court can rely on the record from the prior hearing in deciding the present motion. *United States v. Bey*, No. 15-CR-87, 2015 WL 7176340, at *1 (W.D. Pa. Nov. 13, 2015) (Fischer, J.) ("this court may make its independent determination on the issue of pretrial detention based solely upon the evidence introduced at the prior hearing") (cleaned up). That new counsel may have asked different questions or called different witnesses isn't a reason for a do-over. That said, the Court will, in any event, accept

the representations of fact proffered by Mr. Wilson as part of his brief now. Those facts, though, don't change the outcome here.

As to the merits of the detention decision, even assuming Mr. Wilson has rebutted the presumption of detention with some evidence (a generous assumption), the government has established that he poses a threat of harm (by clear and convincing evidence), and a risk of flight (by a preponderance of the evidence).

Consider the familiar factors under the Bail Reform Act.

***Nature and circumstances of the offense.*** Mr. Wilson's offense is undeniably serious. He appears to have been a part of a large-scale drug trafficking organization distributing significant amounts of cocaine across the country. The Bail Reform Act's intent to equate drug trafficking with danger to the community is especially true where those involved were "trafficking significant quantities of very dangerous and addictive drugs like. . . cocaine." *United States v. Oliver*, No. 16-CR-40, 2016 WL 1746853, at \*8 (W.D. Pa. May 3, 2016) (Fischer, J.). The pending conspiracy charge's mandatory minimum of 10 years and maximum of life further shifts the balance toward detention. ECF 102 at 1; 21 U.S.C. §§ 841(b)(1)(A), 846; *United States v. Egurrola-Gamboa*, 2020 WL 6826583, \*7 (W.D. Pa., Nov. 20, 2020) (Hardy, J.) (mandatory minimum of 10 years and maximum of life as weighing in favor of detention). This factor strongly supports detention.

***Weight of the evidence.*** The evidence against Mr. Wilson is significant. There is no dispute that, on July 10, 2025, agents found tools of the drug trade during a search of Mr. Wilson's residence, including approximately $20,190 in currency, a scale with white residue, a composition notebook, marijuana, and suspected mushrooms and cocaine. These items are "evidence of [Mr. Wilson's] involvement in a drug trafficking offense." *United States v. Younger*, 476 F. App'x 509, 511 (3d Cir. 2012). And ample evidence shows Mr. Wilson coordinating and participating in meetings with other alleged drug trafficking coconspirators, including those found

arrested while in possession of 10 kilograms of cocaine, thousands of dollars of cash, and other tools of the trade.  One of those meetings resulted in Mr. Wilson receiving a car battery, which, according to prior surveillance, was a common method of transporting 4-5 kilograms of cocaine.  Although much of the evidence against Mr. Wilson is circumstantial, the grand jury's indictment against him demonstrates the weight of the combined evidence.  This factor too supports detention.

*__History and characteristics of Defendant.__*  Accepting Mr. Wilson's proffer, he has strong family and other ties to the community.  But that doesn't mitigate his threat of danger or risk of flight.  True, Mr. Wilson is a lifelong resident of the Pittsburgh area with significant local ties.  Pre-trial Services Report at 1.  He has lived with his girlfriend Valeska Cordoba in a house he owns since 2018, and he also owns and works at several local businesses.  *Id.* at 2.  Mr. Wilson maintains daily and weekly contact with his mother and four of his five children, who all live in the area.  *Id.* at 1-2.  He does not have a valid passport, *id.* at 2, and Ms. Cordoba (who was previously verified by the Probation Office) and Mr. Wilson's daughter, Catora Wilson, were prepared to serve as third-party custodians at his detention hearing, ECF 180 at 2.

But all the circumstances weighing in Mr. Wilson's favor appear to have been true when he committed the offense at issue.  The Court is unconvinced that Mr. Wilson continuing to live with Ms. Cordoba or instead living with his daughter would materially diminish his likelihood to commit crime.

Further, Mr. Wilson's criminal history makes it unlikely that any conditions of pre-trial release would stop him from committing crime or from fleeing.  As the government notes, Mr. Wilson's history "includes convictions beginning in 1997 and continuing, virtually nonstop, until [his] most recent arrest in the instant matter."  ECF 194 at 7.  That many of his arrests occurred while under supervision or on bond strengthens the justification for detention.  Pre-trial Services Report at 4-12.  Indeed,

his track record of non-compliance shows he is a serious risk of flight too.  Mr. Wilson has failed to appear in court on three occasions, violated conditions of probation on 8 occasions, and committed offenses while on bond on 13 occasions.  *Id.*  Mr. Wilson was also convicted of escape and resisting arrest and charged with false identification to a law enforcement officer.  *Id.*  Based on his extensive record, even while living with Ms. Cordoba for many years, oversight by a third-party custodian would not meaningfully reduce Mr. Wilson's risk of flight.

***Nature and seriousness of the danger posed.***  Considering Mr. Wilson's past behavior and conduct related to the offense at issue, the Court finds that he presents a serious risk of drug-trafficking, violence, and theft.  His involvement in a drug trafficking scheme transporting significant amounts of "dangerous, addictive drugs such as cocaine" posed "a substantial risk of harm to community."  *Araiza-Vega*, 2020 WL 6546136, at \*8.  The Court sees no conditions of release that would effectively deter Mr. Wilson from engaging in these dangerous behaviors.

In sum, considering all of the statutory factors, the Court agrees with Magistrate Judge Taylor's decision to detain Mr. Wilson pending trial.  The Court finds that the government has established by clear and convincing proof that Mr. Wilson is a danger to the community, by a preponderance of the evidence that he is a flight risk, and that no combinations of conditions of supervision would sufficiently mitigate those risks.  Detention is therefore warranted.

## CONCLUSION

For the reasons discussed above, the Court hereby **DENIES** Mr. Wilson's motion for release from custody and request for a detention hearing (ECF 174, 180) and **ORDERS** Mr. Wilson detained pending trial.

DATED: March 12, 2026                          BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

- 10 -